# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

AFA TUATO, et al.,

       Plaintiffs,

vs.                                         CIV 00-269 KBM/WWD

WILLIAM R. BROWN, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of several pending motions in limine.  Trial is scheduled to begin Monday, July 2, 2001.  The Court has reviewed the motions, the memoranda submitted by the parties and the relevant authorities.  As to the motions decided below, the Court finds that the issues decided below have been sufficiently briefed such that oral argument is unnecessary.

### *Plaintiffs' Motion in Limine to Preclude Testimony as to Identity of Driver as Someone Other that Kendrick Amituanai (Doc. 74)*

Plaintiffs first contends that Defendants are estopped from denying Mr. Amituanai was the driver because Defendant Brown collected insurance from his own policy for uninsured motorist coverage.  As I have found previously, at the time he negotiated and collected the insurance proceeds, Mr. Brown had no reason to question the accident report identifying Mr. Amituani as the driver of the Dodge pickup.  Since that time, Defendant's accident reconstructionist Mr.

Charles has concluded that Amituani could not have driving that vehicle.  Thus, I am unpersuaded that the presentation of such evidence should be precluded on estoppel principles.

Plaintiffs also maintain that there is no credible evidence that anyone but Mr. Amituanai was driving the Dodge pickup.  Assuming that Defendants meet their burden in demonstrating that Mr. Charles qualifies as an expert in this subject and make the preliminary required showing of admissibility under F.R.E. 702 and 703, this argument is without merit.  At the hearing Monday morning, I will address my gatekeeping duties under *Daubert* and determine whether Defendants can meet their obligation under the federal rules for admissibility of evidence that someone other that Mr. Amituani was driving the pickup.

Finally, Plaintiffs assert that Defendants want to present evidence of an alternative driver solely to interject prejudicial evidence that the other two decedents were possibly under the influence of drugs or alcohol.  Yet as Defendants point out, even if Mr. Amatuani was the driver, toxicology evidence relating to the other decedents may yet be relevant to other issues in this wrongful death action.  Moreover, based upon Mr. Charles' report, I cannot say that Defendants are acting in bad faith in seeking to introduce evidence of an alternative driver.

Clearly evidence that a driver was under the influence of some substance is relevant to the issue of comparative negligence.  *See* MUJI 5.12 (person is "intoxicated" by alcohol or drugs when their "physical or mental abilities are impaired to the extent that the person is unable to drive a vehicle in the manner that a reasonable, prudent person would drive under the same or similar circumstances").  Insofar as Plaintiffs contend that the reported level of alcohol could not constitute an impairment, that will be an issue for the jury.  Thus, assuming Defendants can

demonstrate the sufficient reliability and admissibility of expert testimony that someone other than

Mr. Amituanai was the driver, the motion will be denied.

### *Plaintiffs' Motion in Limine to Preclude Testimony of*
### *Non-Disclosed "Experts" and Other Witnesses (Doc. 69)*

I have already informed counsel that insofar as the motion seeks to exclude testimony by

Mr. Grisham, I will hold an evidentiary hearing on Monday morning.  The motion also seeks to

preclude testimony by toxicologists Susan A. Rasmussen, Barbara Jepson, Brenda Beck and/or

Terry Lamareaux who performed toxicology tests on the decedents and prepared reports as well

as Trooper David Bairett of the Highway Patrol.  Plaintiffs contend that preclusion of their

testimony is required under FED. R. CIV. P. 37(a) on the basis that none of the four witnesses

identified in the Pre-Trial Order as toxicologists nor Trooper Barrett were previously disclosed as

either "retained or percipient experts."  *Memorandum in Support* at 3.

None of these witnesses have been employed as experts by Defendants.  Therefore, FED.

R. CIV. P. 26(a)(2)(B) did not require Defendants to produce an experts reports for them.  Even

so, Defendants provided Plaintiffs with a copy of the accident report by Troopers Bairett and

Collings in February of last year.  Toxicology reports identifying the toxicologist witnesses were

attached to that accident report, all of which were provided to Plaintiffs as a part of Defendants'

Rule 26 Initial Disclosures.  I find that Defendants met their obligation to timely identify these

witnesses.  Even if their identification in the Pre-Trial Order was considered untimely, Plaintiffs

have demonstrated no surprise or prejudice.  Plaintiffs have long known that Defendants would

seek to introduce the toxicology evidence and that Trooper Bairett was one of the officers who

investigated the accident.  Indeed, Plaintiffs listed Bairett in their own initial disclosures as likely

to have discoverable information.  Thus, the motion in limine will be denied as to testimony by the toxicologists and Trooper Bairett.

### Defendants' Motion in Limine Regarding Proposed Video Simulation Prepared by David Ingebretsen (Doc. 77)

Defendants argue that the Plaintiffs' proposed video simulation does not fairly or accurately represent events leading up to the accident and that its probative value is substantially outweighed by undue prejudice to Defendants.  Specifically, Defendants contend that: Brown says it was "pitch black" and the video shows the accident in light; Brown saw an "instant"  "puff" of dust when the truck ran off the shoulder and the video shows a "stampede" of dust traveling for a long distance; Brown saw other cars traveling in the southbound lane where the truck was and the video shows no other vehicles.  Defendants also argue that Ingebretsen testified that the software he used is not an "accident reconstruction tool" and that other things depicted in the simulation are based on speculation.

Rule 901(a) provides that the condition precedent of authentication is satisfied if the evidence shows that "the matter in question is what its proponent claims."  There is no contention by Defendants that this is not what the tape purports to be – a three-dimensional depiction of certain data. Plaintiffs attach Ingebretsen's affidavit, which describes that the software renders three-dimensional depictions of scientific data and that for that data, he used measurements of marks from the scene, the accident report, calculations of Mr. Probst (Plaintiffs' expert), and information from an interview with Trooper Collings.  In short, his computer simulation is a graphical depiction of the Probst's findings.

Insofar as Defendants dispute that the simulation is not a fully accurate representation of the events, these arguments go to impeachment and weight of the evidence, not its admissibility. The Tenth Circuit has provided the following guidance for such a video simulation:

> At trial, Honda introduced a videotape depicting a collision between a train and an automobile.  It did so for the limited purpose of demonstrating the physical forces at play in a train-automobile accident.  Plaintiffs objected, arguing that the tape was inadmissible because it was substantially dissimilar to the actual accident and because it was inflammatory and misleading under Fed. R. Evid. 403. The district court denied Plaintiffs' objections.  Tests and experiments may be dissimilar from the actual accident if they are meant to illustrate general physical principles rather than re-create the accident.  *Robinson v. Missouri Pac. R. Co.,* 16 F.3d1083, 1087 (10th Cir. 1994); *Gilbert v. Cosco Inc.,* 989 F.2d 399, 402 (10th Cir. 1993).  If a simulation is offered, however, for the limited purpose of illustrating general principles, the district court should instruct the jury that the evidence is not intended as a re-creation of the accident.  *Gilbert,* 989 F.2d at 402.  Here, Honda introduced the videotape for the limited purpose of portraying the forces at work in a train-automobile collision.  The district court specifically instructed the jury not to consider the videotape as a re-creation of Mrs. Montag's accident.  Given the district court's broad discretion in this area, we cannot say that it erred in allowing the jury to view the videotape.

*Montag v. Honda Motor Co., Ltd.,* 75 F.3d 1414, 1420 (10th Cir.), *cert. denied,* 519 U.S. 814 (1996).  Thus, I find that unless precluded under F.R.E. 403, the video simulation would be admissible if accompanied with a similar limiting instruction.

In *Montag*, the Tenth Circuit also evaluated pursuant to F.R.E. 403 the prejudicial effect of such evidence and determined in that case:

> a review of the videotape indicates that it was not so inflammatory or misleading as to require us to reverse the district court. Although the tape does repeatedly show the train's plow handle striking a dummy's head, any prejudicial effect was countered by the

district court's limiting instruction and by Plaintiffs' opportunity for
vigorous cross- examination.  *See Robinson,* 16 F.3d at 1088.

*Id.*  Before I can engage in a similar balancing of probative value against undue prejudicial effect

as to Plaintiffs' proposed evidence, I must view the video simulation.  I will do so at Monday

morning's hearing.

　　　　IT IS SO ORDERED.


_____
**UNITED STATES MAGISTRATE JUDGE**